1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   YA CHANG,

11             Plaintiff,                    No. CIV S-08-3132 DAD

12        vs.

13   MICHAEL J. ASTRUE,                      <u>ORDER</u>
     Commissioner of Social Security,
14
               Defendant.
15   _____/

16             This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19   Commissioner of Social Security (the Commissioner) is reversed, and the matter is remanded

20   with the direction to award benefits.

21                            **PROCEDURAL BACKGROUND**

22             On October 24, 2005, plaintiff applied for Supplemental Security Income (SSI)

23   benefits under Title XVI of the Social Security Act (the Act), alleging that she became disabled

24   on June 11, 2004.  (Transcript (Tr.) at 88-95.)  Plaintiff claimed disability based on asthma,

25   kidney problems, depression, memory loss, coughing, shortness of breath, gall bladder problems,

26   neck and shoulder pain, sleeping problems, and poor concentration.  (Tr. at 108.)

1    Plaintiff's application was denied initially on April 12, 2006, and upon

2 reconsideration on March 16, 2007.  (Tr. at 77-81, 70-76.)  A hearing was held before an

3 Administrative Law Judge (ALJ) on December 12, 2007.  (Tr. at 23-54, 66.)  Plaintiff was

4 represented at the hearing by an attorney and testified through an interpreter.  (Tr. at 23-45, 53-

5 54.)  A vocational expert also testified.  (Tr. at 45-53.)  In a decision issued on February 20,

6 2008, the ALJ found plaintiff not disabled.  (Tr. at 12-22.)  The ALJ entered the following

7 findings:

8    1.  The claimant has not engaged in substantial gainful activity
     since October 24, 2005, the application date (20 CFR 416.920(b)
9    and 416.971 *et seq.*).

10    2.  The claimant has the following severe impairments: moderate,
      persistent asthma, back pain, major depressive disorder and post
11    traumatic stress disorder (PTSD) (20 CFR 416.920(c)).

12    3.  The claimant does not have an impairment or combination of
      impairments that meets or medically equals one of the listed
13    impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
      416.920(d), 416.925 and 416.926).

14

15    4.  After careful consideration of the entire record, the undersigned
      finds that the claimant has the residual functional capacity to
      perform light work except avoiding moderate exposure to
16    temperature extremes and pulmonary irritants and mentally
      performing only simple routine tasks (unskilled work).

17

18    5.  The claimant has no past relevant work (20 CFR 416.965).

19    6.  The claimant was born on June 15, 1969 and was 36 years old,
      which is defined as a younger individual age 18-49, on the date the
      application was filed (20 CFR 416.963).

20

21    7.  The claimant is not able to communicate in English, and is
      considered in the same way as an individual who is illiterate in
      English.

22

23    8.  Transferability of job skills is not an issue because the claimant
      does not have past relevant work (20 CFR 416.968).

24    9.  Considering the claimant's age, education, work experience,
      and residual functional capacity, there are jobs that exist in
25    significant numbers in the national economy that the claimant can
      perform (20 CFR 416.960(c) and 416.966).

26 /////

2

1      10.  The claimant has not been under a disability, as defined in the
       Social Security Act, since October 24, 2005, the date the
2      application was filed (20 CFR 416.920(g)).

3  (Tr. at 14-22.)

4           On June 25, 2008, the Appeals Council denied plaintiff's request for review of the

5  ALJ's decision, thereby making that decision the final decision of the Commissioner.  (Tr. at 4-

6  7.)  On October 29, 2008, the Appeals Council granted plaintiff's request for more time to file a

7  civil action.  (Tr. at 2-3.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing

8  the complaint in this action on December 23, 2008.

9                                    **LEGAL STANDARD**

10          The Commissioner's decision that a claimant is not disabled will be upheld if the

11  findings of fact are supported by substantial evidence in the record as a whole and the proper

12  legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

13  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

14  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

15  conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

16  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

17  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

18  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

19  (1971)).

20          A reviewing court must consider the record as a whole, weighing both the

21  evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

22  at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

23  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

24  substantial evidence supports the administrative findings, or if there is conflicting evidence

25  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

26  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

   In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

   The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Yuckert</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id.</u>; <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

   Plaintiff advances three arguments in her motion for summary judgment.  First, she asserts that the ALJ rejected the opinions of treating and examining physicians without a legitimate basis for so doing.  Second, plaintiff contends that the ALJ failed to reference, much less discuss, the third-party statements of her boyfriend regarding the nature and extent of her

functional limitations.  Third, plaintiff argues that the ALJ failed to properly assess her residual

functional capacity (RFC), failed to pose a legally adequate hypothetical question to the

vocational expert (VE), and failed to credit the testimony of the VE in response to questions that

accurately reflected plaintiff's functional limitations.  The court addresses each argument below.

**I.      Whether the ALJ Erred in Rejecting Medical Opinions**

It is well established that the weight to be given to medical opinions depends in

part on whether they are proffered by treating, examining, or non-examining professionals.

Lester, 81 F.3d at 830.  "As a general rule, more weight should be given to the opinion of a

treating source than to the opinion of doctors who do not treat the claimant . . . ."  Id.  A treating

doctor is employed to cure and has a greater opportunity to know and observe the patient as an

individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

F.2d 1059, 1063 (9th Cir. 1990).  Of course, the ALJ need not give controlling weight to

conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111,

1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"At least where the treating doctor's opinion is not contradicted by another doctor,

it may be rejected only for 'clear and convincing' reasons."  Lester, 81 F.3d at 830 (quoting

Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "Even if the treating doctor's opinion

is contradicted by another doctor, the Commissioner may not reject this opinion without

providing 'specific and legitimate reasons' supported by substantial evidence in the record for so

doing."  Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

If a treating professional's opinion is contradicted by an examining professional's opinion that is

supported by different, independent clinical findings, the ALJ may resolve the conflict.  Andrews

v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751).

"The opinion of a nonexamining physician cannot by itself constitute substantial

evidence that justifies the rejection of the opinion of either an examining physician *or* a treating

physician."  Lester, 81 F.3d at 831 (emphasis in original).  See also Pitzer v. Sullivan, 908 F.2d

1  502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing more"

2  did not constitute substantial evidence for rejecting the opinions of treating or examining

3  physicians); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that the report of

4  the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of

5  the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's

6  decision to reject the examining physician's opinion that the claimant was disabled). "When an

7  examining physician relies on the same clinical findings as a treating physician, but differs only

8  in his or her conclusions, the conclusions of the examining physician are not 'substantial

9  evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). "Independent clinical findings can

10  be either (1) diagnoses that differ from those offered by another physician and that are supported

11  by substantial evidence or (2) findings based on objective medical tests that the treating physician

12  has not herself considered." Id. (citations omitted).

13         Here, plaintiff challenges the ALJ's treatment of the opinions of Allan R. Au,

14  M.D., who was plaintiff's allergist; Hari Goyal, M.D., a consultative examiner who performed a

15  comprehensive internal medicine evaluation of plaintiff on December 17, 2005; and the mental

16  health provider who treated plaintiff at Sacramento County's Northgate Point facility in June and

17  August of 2007.

18         Dr. Au began treating plaintiff on July 31, 2001, on a referral from Anh Huynh

19  Nguyen, M.D., who was plaintiff's primary care physician. (Tr. at 230.) On November 13,

20  2007, after having treated plaintiff for more than six years, Dr. Au completed a form titled

21  "Pulmonary Residual Functional Capacity Questionnaire." Plaintiff contends that the ALJ

22  presented a misleading and incomplete summary of Dr. Au's opinion of her pulmonary RFC,

23  failed to recognize the validity of Dr. Goyal's opinion about her functional limitations, and

24  rejected the opinions of the treating specialist and the examining physician in favor of the

25  opinions of non-treating, non-examining state agency physicians who found plaintiff capable of

26  performing light work, limited only by a need to avoid moderate exposure to pulmonary irritants.

1  Plaintiff argues further that the ALJ  minimized the degree of her mental limitation and adopted

2  the opinion of the examining consultative psychiatrist instead of the opinions of plaintiff's

3  treating mental health provider.

4          The ALJ found that plaintiff had the severe impairments of moderate, persistent

5  asthma, back pain, major depressive disorder, and post-traumatic stress disorder but that the

6  impairments did not meet or equal any listed impairment.  (Tr. at 14-16.)  As a prelude to his step

7  four and step five determinations regarding plaintiff's ability to perform past relevant work or

8  any other work, the ALJ determined that plaintiff had the RFC to perform light work except that

9  she must avoid moderate exposure to temperature extremes and pulmonary irritants, and is

10  limited mentally to performing only simple routine tasks, i.e., unskilled work.  (Tr. at 16-21.)

11          In his RFC analysis, the ALJ discussed or cited the following medical evidence

12  and opinions:  records of plaintiff's hospitalization in November and December 2002; Dr.

13  Nguyen's treatment records from December 2000 to June 2007; the comprehensive internal

14  medicine consultative examination by Dr. Goyal on December 17, 2005; the comprehensive

15  psychiatric consultative examination by Hisham Soliman, M.D., on December 14, 2005; Dr.

16  Au's treatment records from July 2001 through November 2007 and the pulmonary RFC

17  questionnaire completed by Dr. Au in November 2007; and Northgate Point psychiatric treatment

18  records from June 2007 through August 2007.  (Tr. at 17-18.)

19          The ALJ noted that "[t]he State Agency (SA) determined in January 2006

20  [claimant] could perform light work, avoiding moderate exposure to pulmonary irritants and in

21  April 2006 affirmed she could perform light work, and that she could perform one-two step tasks

22  (Exhibits 84F-120F [tr. at 237-73])."  (Tr. at 18.)  The exhibits cited by the ALJ include case

23  activity logs and staff notes (tr. at 237-47), the form assessment of plaintiff's physical RFC by

24  state agency physician A.G. Dipsia, dated January 19, 2006 (tr. at 248-55), and the form

25  assessment of plaintiff's mental RFC, including a completed Psychiatric Review Technique

26  form, by state agency physician D.E. Gross, dated April 5, 2006 (tr. at 256-73).

With respect to the treating and examining physicians' opinions at issue, the ALJ found that

> Dr. Hari Goyal, Board Certified, performed a comprehensive internal medicine CE [Consultative Examination] December 17, 2005 for reported shortness of breath and wheezing for seven years, aches and pain, headaches, difficulty sleeping, back pain, and depression for eight years.  She had a normal physical examination and review of records resulted in diagnoses of moderate, persistent asthma, PTSD and pregnancy.  The functional assessment indicated she was limited to sedentary work, avoiding extreme temperatures, humidity, dust, or chemical fumes.  He explained that her limited ability to walk and stand was due to pregnancy and bronchial asthma (Exhibits 71F-75F [tr. at 282-86]).

(Tr. at 17.)  The ALJ found that the

> [m]edical records from Dr. Allan Au document he treated the claimant from July 31, 2001 through November 13, 2007 for asthma and allergic rhinitis.  A pulmonary function tests [sic] (PFT) in March and April 2003 resulted in an interpretation of mild restrictive ventilatory defect and suggested the possibility of superimposed early obstructive pulmonary impairment.  PFT studies in May and June 2003 resulted in interpretation of mild obstructive pulmonary impairment and early obstructive impairment.  A May 2007 PFT resulted in an interpretation of mild restrictive ventilatory defect and suggested the possibility of superimposed early obstructive pulmonary impairment and a studies [sic] the next month moderate restrictive ventilatory defect and early obstructive pulmonary impairment and suggested the possibility of superimposed early obstructive pulmonary impairment [sic].  The doctor completed a pulmonary residual functional capacity [sic] which indicated she had environmental limitations and would miss about four days of work per month as a result of her impairment or treatment.  The doctor did not identify any lifting, walking, standing, sitting or postural limitations (Exhibits 129F-176F [tr. at 190-236]).

(Tr. at 18.)

The ALJ explained his assignment of weight to the medical opinions as follows:

> As for the opinion evidence, the undersigned adopted the SA [State Agency] determinations in combination with the medical opinions contained in the psychiatric CE [Consultative Examination] as being the most reliable in establishing [claimant's] residual functional capacity.  Thus, this evidence was given controlling weight.

/////

1

2

3

> The medical opinions of Dr. Au were not given controlling weight as his clinical and PFT [Pulmonary Function Test] findings do not support that she would miss four days of work per month due to her impairment or treatment given the findings and functional assessment by Dr. Goyal and the SA determinations.

4

5

6

7

> Dr. Goyals' [sic] functional assessment was not given full weight as the standing and walking limitation was based on her asthma and pregnancy.  Since the claimant has delivered her baby, she testified to having a nine month old baby, that limitation is no longer valid.  The undersigned accorded only moderate weight to his assessment.

8

(Tr. at 20-21.)

9    The ALJ did not find that the medical opinions of either Dr. Au or Dr. Goyal were

10  contradicted by the opinion of any treating or examining doctor.  The opinions of the non-

11  treating, non-examining state agency physicians were not supported by other evidence which

12  would have permitted the ALJ to rely on their opinions as a basis for rejecting the opinions of

13  treating physician Dr. Au and examining physician Dr. Goyal.  Thus, the ALJ was required to

14  provide "clear and convincing" reasons for rejecting Dr. Au's and Dr. Goyal's opinions.  Lester,

15  81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).

16  According to the ALJ, Dr. Au's medical opinions were not entitled to controlling

17  weight because the doctor's "clinical and PFT findings do not support that she would miss four

18  days of work per month due to her impairment or treatment given the findings and functional

19  assessment by Dr. Goyal and the SA determinations."  (Tr. at 20-21.)  The court finds this

20  assertion by the ALJ baffling.  The ALJ did not identify any findings or functional assessments

21  made by Dr. Goyal in 2005 or any specific determination by Dr. Dipsia in 2006 that rendered Dr.

22  Au's clinical and pulmonary function test findings inadequate to support Dr. Au's conclusion,

23  after treating plaintiff for over six years, that she would be absent from work, on average, four

24  days per month.

25  The court has carefully examined the questionnaire completed by Dr. Au.  The

26  doctor clarified that he was plaintiff's allergist, not her primary care physician or a

pulmonologist.  (Tr. at 192.)  He diagnosed cough, asthma, allergic rhinitis, and allergic

conjunctivitis, citing spirometry showing mild to moderate obstruction.  (Id.)  He found her

symptoms to include episodic acute asthma, which is manifested in intermittent attacks

precipitated by upper respiratory infection, allergens, or exercise.  (Id.)  He noted that as of

November 2007 plaintiff had experienced asthma attacks twice since the spring and that an

average attack for plaintiff incapacitates her for one to two weeks.  (Tr. at 193.)  Dr. Au did not

find plaintiff to be a malingerer and opined that her impairments were consistent with the

symptoms and functional limitations described in his evaluation.  (Id.)  He opined that her

prognosis was good, explaining that her asthma is probably "lifelong but exacerbations will be

intermittent."  (Id.)  Dr. Au indicated with question marks that he was unable to estimate

plaintiff's exertional limitations in a work situation.  (Tr. at 194.)  As plaintiff's allergist,

however, he opined that plaintiff should avoid all exposure to cigarette smoke, soldering fluxes,

solvents, cleaners, fumes, odors, gases, and chemicals; should avoid even moderate exposure to

extreme cold, extreme heat, perfumes, dust, and other irritants; and should avoid concentrated

exposure to high humidity and wetness.  (Tr. at 195.)  In response to the final specific question

on the form, Dr. Au indicated that plaintiff's impairments are likely to produce "good days" and

"bad days" and that, on the average, plaintiff is likely to be absent from work as a result of her

impairments or treatment for about four days per month.  (Id.)

   Although the treatment records from Dr. Au's office are difficult to decipher in

part due to copy quality and in part due to handwriting, the records provide ample evidence that

plaintiff's impairments require frequent treatment and extensive medication.  (Tr. at 196-236.)

These records also support Dr. Au's opinion regarding plaintiff's likely absences from work due

to her condition, on average, four times per month, although the absences may consist of

intermittent acute asthma attacks that leave plaintiff incapacitated for a period of one or two

weeks, as well as months in which she would be absent only for routine follow-up care,

injections, or medication changes.

1    On this record, the court concludes that the ALJ did not offer any clear and

2   convincing reason for rejecting Dr. Au's opinions about plaintiff's absences from work and that

3   the ALJ should have given controlling weight to Dr. Au's opinion regarding plaintiff's likely

4   absences from work.

5    The court reaches a similar conclusion with respect to the ALJ's rejection of Dr.

6   Goyal's opinion about plaintiff's limitation to sedentary work.  According to the ALJ, Dr. Goyal

7   "explained that [the claimant's] limited ability to walk and stand was due to pregnancy and

8   bronchial asthma."  (Tr. at 17, citing Exs. 71F-75F [tr. at 282-86].)  The ALJ stated that he did

9   not give full weight to Dr. Goyal's functional assessment because "the standing and walking

10  limitation was based on her asthma and pregnancy" and, since plaintiff had delivered her baby,

11  "that limitation is no longer valid."  (Tr. at 21.)  Dr. Dipsia, the state agency physician whose

12  assessment the ALJ found "the most reliable in establishing [the claimant's] residual functional

13  capacity," went even further, stating that, unlike Dr. Goyal, he "didn't limit her stand/walk to less

14  than two hours due to her pregnancy," ignoring the asthma component altogether.  (Tr. at 254.)

15   Dr. Goyal commenced his functional assessment with the statement that "[t]he

16  number of hours the claimant would be expected to stand and walk in an eight-hour workday is

17  less than two hours, mainly limited because of her pregnancy and bronchial asthma."  (Tr. at

18  285.)  He went on to say that plaintiff would be expected to sit about six hours in an eight-hour

19  day but might need frequent breaks and that she could frequently lift 20 pounds but "may not be

20  able to lift more than 20 pounds because of her pregnancy and asthma."  (Tr. at 285-86.)  He

21  imposed "postural limitations on bending, stooping, crouching, and so on," but noted "the

22  limitation is for so long as she is pregnant."  (Tr. at 286 (emphasis added).)  He concluded with

23  workplace environmental limitations precluding her from working "in extreme temperatures,

24  humidity, dust, or chemical fumes because of her allergic bronchial asthma."  (Tr. at 286.)  Dr.

25  Goyal made it completely clear that the postural limitations he assessed would apply only while

26  plaintiff was pregnant.  The logical inference to be drawn from this record is that the two-hour

1    limitation on standing and walking, and the limitation to lifting no more than twenty pounds,

2    both of which were imposed because of plaintiff's pregnancy and her asthma, still applied when

3    plaintiff was no longer pregnant, because the doctor did not indicate otherwise.  The court

4    concludes that the ALJ's reason for rejecting Dr. Goyal's two-hour stand/walk limitation is not

5    convincing and the ALJ should have given full weight to Dr. Goyal's functional assessment.

6              The court also notes that the state agency physicians making determinations in

7    2006 did not have an opportunity to consider Dr. Au's opinion, which was not rendered until

8    November 13, 2007.  Nor did the state agency physicians have access to Dr. Au's treatment

9    records, which included several pulmonary function test results and spanned the period from July

10   31, 2001 through November 13, 2007, as those records were provided to the ALJ on November

11   27, 2007.  (Tr. at 190.)  Dr. Goyal and Dr. Soliman, both of whom examined plaintiff in

12   December 2005, were provided with few if any medical records to review.  (Tr. at 274, 282.)  In

13   contrast, Dr. Au was a specialist who had treated plaintiff for more than six years and whose goal

14   was to improve plaintiff's condition.  The court finds that Dr. Au's uncontradicted opinions were

15   entitled to controlling weight with regard to the effects of plaintiff's asthma on her residual

16   functional capacity.  The state agency opinions adopted by the ALJ were based largely on the

17   opinions of the consulting examiners, each of whom examined plaintiff once.  Dr. Dipsia's

18   opinion consists entirely of boxes marked on the form, with only one explanation and no citation

19   to facts, and it tracks Dr. Goyal's assessment except for Dr. Dipsia's rejection of Dr. Goyal's

20   stand/walk limitation.  (See tr. at 249-50, 252, 254.)

21             The court finds that the opinions of the state agency physicians and the

22   determinations of the state agency do not constitute substantial evidence justifying the ALJ's

23   rejection of any of the opinions of Dr. Au and Dr. Goyal, and the ALJ's analysis fails to establish

24   "clear and convincing" reasons for rejecting the medical opinions at issue.  In the absence of such

25   reasons, the court finds that plaintiff is entitled to summary judgment on her claim that the ALJ

26   improperly rejected the opinions of treating allergist Dr. Au and consultative examiner Dr. Goyal

regarding her functional limitations.

The court has considered plaintiff's argument concerning the opinions of Han Nguyen, M.D., the psychiatrist who saw plaintiff for an initial psychiatric evaluation on June 29, 2007, and saw her again for follow up treatment on August 17, 2007. (Tr. at 176-81.)  Although the ALJ did determine that plaintiff's severe impairments include major depressive disorder and post traumatic stress disorder, there appears to be some merit in plaintiff's contention that the ALJ attempted to minimize the seriousness of her mental impairments.  (See tr. at 14, 17-18.) The court has also noted errors in the ALJ's factual analysis of plaintiff's mental health.  For example, the ALJ stated that plaintiff's mental complaints lacked full credibility because, among other reasons, "there is no evidence of any individual or group therapy." (Tr. at 20.)  Plaintiff's adult function report dated January 26, 2007, indicates that she had been going to Turning Point for mental health issues since September 2006 (tr. at 134), and Dr. Nguyen's treatment plan in August 2007 included supportive treatment and counseling with Hmong PSC at Northgate Point (tr. 15 176).  However, the court finds that plaintiff has not pointed to a specific opinion of Dr. Nguyen's that was rejected by the ALJ in violation of the law applicable to the treatment of medical opinions.

II.    **Whether the ALJ Erred in Failing to Address Third Party Statements**

In a Function Report - Adult - Third Party dated November 9, 2005, and in another such report dated January 27, 2007, Ze Lor, describing himself as plaintiff's spouse, provided reports about plaintiff's abilities and limitations.  (Tr. at 150-57, 117-24.)  Mr. Lor indicated that he had known plaintiff for over 10 years, that he saw her every day and night, and that he was the one who took care of everything around the house and supported the family.  (Tr. at 117, 150.)  His statements, which were based on his own observations regarding plaintiff's impairments on a daily basis over many years, supported plaintiff's testimony regarding the severe restrictions on her daily activities and abilities.

/////

13

1        The Commissioner's own regulations provide that information from sources like

2   spouses, other family members, friends, neighbors, and clergy may be used to show how a

3   claimant's impairments affect his ability to work.  20 C.F.R. § 404.1513(d) & 416.913(d).  <u>See</u>

4   <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006); <u>Smolen</u>, 80 F.3d at 1288;

5   <u>Sprague</u>, 812 F.2d at 1232.  Family members and other persons who see the claimant on a daily

6   basis are particularly competent to testify as to their observations.  <u>Regennitter v. Comm'r of</u>

7   <u>Soc. Sec. Admin.</u>, 166 F.3d 1294, 1298 (9th Cir. 1999); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19

8   (9th Cir. 1993).  If the ALJ chooses to reject or discount the testimony of a lay witness, he must

9   give reasons germane to that particular witness in doing so.  <u>Regennitter</u>, 166 F.3d at 1298;

10  <u>Dodrill</u>, 12 F.3d at 919.

11       Here, the statements of Mr. Lor should have been considered and discussed by

12  the ALJ.  Instead, the ALJ's decision contains no mention of the function reports submitted by

13  Mr. Lor.  The ALJ's error in failing to consider and discuss Mr. Lor's statements was not

14  harmless because his statements corroborated plaintiff's testimony and provided support for a

15  different disability determination.  <u>See</u> <u>Robbins</u>, 466 at 885; <u>Nguyen v. Chater</u>, 100 F.3d 1462,

16  1467 (9th Cir. 1996).  The court finds that plaintiff is entitled to summary judgment on her claim

17  of error arising from the ALJ's failure to consider competent third-party statements.

18  **III.    Whether the ALJ Erred in Assessing RFC and Posing Hypothetical Questions**

19       Plaintiff argues that the ALJ failed to properly assess her RFC, failed to pose a

20  legally adequate hypothetical question to the VE, and failed to credit the VE's testimony in

21  response to questions that accurately reflected plaintiff's functional limitations.

22       A claimant's RFC is "the most [the claimant] can still do despite [his or her]

23  limitations."  20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the

24  relevant evidence in [the claimant's] case record."  <u>Id.</u>  <u>See also</u> <u>Mayes v. Massanari</u>, 276 F.3d

25  453, 460 (9th Cir. 2001).  The Commissioner may satisfy his burden of showing that the claimant

26  can perform past relevant work or other types of work in the national economy by taking the

1   testimony of a vocational expert.  Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661,

2   663 (9th Cir. 1988).

3          Here, the court has determined that the ALJ improperly rejected the opinions of

4   Dr. Au and Dr. Goyal as to plaintiff's limitations and that the ALJ improperly failed to consider

5   the statements of plaintiff's boyfriend regarding her functional limitations.  As a result of these

6   errors, the ALJ failed to base plaintiff's RFC upon the whole record and reached the erroneous

7   conclusion that plaintiff has the RFC to perform light work as long as she is limited to

8   performing simple, routine tasks and avoids moderate exposure to temperature extremes and

9   pulmonary irritants.  If the rejected opinions and third-party statements had been properly

10  credited, additional impairment-related limitations would have been reflected in the ALJ's final

11  RFC assessment, in the hypothetical questions posed and in the VE testimony that the ALJ

12  ultimately relied upon.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001)

13  (holding that the ALJ is required to question a vocational expert in a manner that properly takes

14  into account the limitations on the plaintiff's abilities to engage in various work-related

15  functions).

16         Plaintiff notes that when the ALJ included Dr. Goyal's two-hour stand/walk

17  limitation in his hypothetical question, the VE testified that plaintiff would be limited to

18  sedentary work, which would require that she have better communication skills and/or the ability

19  to withstand dust, fumes, etc., which are abilities plaintiff does not possess.  With a two-hour

20  stand/walk limitation, the VE was not able to identify any jobs that plaintiff would be able to

21  perform.  (Tr. at 48-49.)  The VE also testified that there would be no jobs for a person who

22  missed four days of work per month or for a person who could not be exposed to any dust.  (Tr.

23  at 53.)  When the ALJ added that the person would be limited to simple, routine, repetitive tasks

24  not performed in a fast production-paced environment, with only simple work-related decisions,

25  relatively few workplace changes, and limitations in math, reading, writing, and speaking

26  English, the VE responded that the jobs he had identified would require a person to keep up with

1    the pace, but he was not sure whether those jobs qualified as "fast-paced."  (Tr. at 51.)

2             Plaintiff argues that if the limitations assessed by Dr. Au and Dr. Goyal had been

3    properly credited, a finding of disability would have resulted on the basis of the VE's testimony.

4    The court agrees.  The ALJ's failure to credit the opinions of Dr. Au and Dr. Goyal, along with

5    the third-party statements of plaintiff's boyfriend, led to the erroneous exclusion of significant

6    limitations from the assessment of plaintiff's RFC and from the hypothetical questions relied

7    upon by the ALJ.  It is evident from the VE's testimony in response to hypothetical questions that

8    contained appropriate limitations that, when the effects of plaintiff's impairments are properly

9    considered, plaintiff is not capable of performing any work on a sustained basis, and there are no

10   jobs in the national economy that she can perform.

11                                   **CONCLUSION**

12            The decision whether to remand a case for additional evidence or to simply award

13   benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

14   1994); Pitzer, 908 F.2d at 506.  The Ninth Circuit has stated that, "[g]enerally, we direct the

15   award of benefits in cases where no useful purpose would be served by further administrative

16   proceedings, or where the record has been thoroughly developed."  Ghokassian, 41 F.3d at 1304

17   (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)).  This

18   rule recognizes the importance of expediting disability claims.  Holohan, 246 F.3d at 1210;

19   Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

20            Here, it is plain that no useful purpose would be served by further administrative

21   proceedings.  Plaintiff filed her application for SSI almost five years ago.  The record has been

22   fully developed.  The VE's answers to certain  hypothetical questions posed by the ALJ

23   affirmatively establish that plaintiff is unable to perform a significant range of sedentary jobs in

24   the national economy.  Had the ALJ based his decision on the VE's testimony in response to the

25   more accurate hypothetical questions, the ALJ would have found plaintiff entitled to benefits as

26   of her application date.  See Lingenfelter v. Astrue, 504 F.3d 1023, 1041 (9th Cir. 2007) (finding

1   the claimant entitled to benefits where he needed to lie down two or three times each day for up

2   to 45 minutes due to pain and where the vocational expert testified that there were no jobs

3   available in the national economy in light of that limitation).

4          For all of the reasons discussed in this order, this matter will be remanded with

5   the direction to award benefits on the ground that plaintiff was under a disability as defined by

6   the Social Security Act on October 24, 2005.  See Moore v. Comm'r of Soc. Sec. Admin, 278

7   F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly

8   rejected the testimony of the plaintiff's examining physicians); Ghokassian, 41 F.3d at 1304

9   (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

10          In accordance with the above, IT IS HEREBY ORDERED that:

11          1.  Plaintiff's motion for summary judgment (Doc. No. 18) is granted;

12          2.  Defendant's cross-motion for summary judgment (Doc. No. 19) is denied;

13          3.  The decision of the Commissioner of Social Security is reversed; and

14          4.  This case is remanded with the direction to award benefits.

15   DATED: August 11, 2010.

16

17   _____

18   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

19

20   DAD:kw
     Ddad1/orders.socsec/chang3132.order

21

22

23

24

25

26

17